IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-02480-PAB-MEH

SUZANNE GARCIA

      Plaintiff,

v.

STATE FARM MUTUAL FIRE AND CASUALTY COMPANY,

      Defendant.

## ORDER

This matter comes before the Court on Plaintiff's Opposed Motion to Stay Proceedings and Compel Appraisal [Docket No. 36]. Defendant filed a response [Docket No. 38] and plaintiff replied [Docket No. 39]. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND

This case arises out of damage to plaintiff's property from a hailstorm on July 29, 2018. Docket No. 36 at 2. The property was insured by defendant under State Farm policy number 068328D81. *Id.* Plaintiff reported the damage to defendant, and defendant inspected the property on April 19, 2019. *Id.* Defendant estimated that the replacement cost value ("RCV") for the loss was $9,290.53. *Id.* Plaintiff retained a contractor, Blue Ribbon Exteriors and Construction ("Blue Ribbon"), who submitted a repair estimate of $40,094.44 to defendant on May 13, 2020. *Id.*; Docket No. 36-3. On June 3, 2020, after receiving Blue Ribbon's estimate, State Farm updated its RCV

estimate to $11,007.59.  Docket No. 36 at 2; Docket No. 36-4.

On June 24, 2020, Blue Ribbon demanded appraisal under the insurance policy. Docket No. 36 at 4; Docket No. 36-5.  On July 11, 2020, defendant informed plaintiff that it did not recognize the assignment of rights under the insurance policy that Blue Ribbon relied on to demand appraisal.  Docket No. 38 at 2-3; Docket No. 37-2.  On July 14, 2020, plaintiff herself demanded appraisal.  Docket No. 36 at 4; Docket No. 36-6. On July 28, 2020, plaintiff brought suit for (1) declaratory judgment that defendant's unfair treatment of plaintiff made it impossible to perform her obligations under the policy and her time to do so should be tolled, (2) breach of contract, (3) breach of the duty of good faith and fair dealing, (4) bad faith breach of an insurance contract, and (5) violation of Colo. Rev. Stat. § 10-3-1115 and relief pursuant to § 10-3-1116.  Docket No. 5 at 5-9.

On August 14, 2020, defendant responded to plaintiff's appraisal demand and informed her that it did not properly invoke appraisal because it "was not preceded by a 'written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.'"  Docket No. 36-7 at 7.  Defendant informed plaintiff that once she identified the items in dispute, defendant would proceed with appraisal subject to a reservation of rights.  *Id.*  Plaintiff did not respond to this correspondence.  Docket No. 38 at 8.  Instead, plaintiff demanded appraisal again on September 29, 2020.  Docket No. 36-8.  Defendant denied this request for the same reason as the previous one.  Docket No. 36-9 at 1.  On October 1, 2020, Blue Ribbon updated its estimate to $90,923.41.  Docket No. 38-1 at 1.  On February 11, 2021, plaintiff filed the instant motion to compel appraisal and stay proceedings.  Docket No.

2

36.

## II. ANALYSIS

Plaintiff argues that the insurance policy requires defendant to participate in the appraisal process. *Id.* at 4. Defendant argues that the Court should deny the motion because plaintiff waived the right to invoke appraisal, plaintiff's demands for appraisal were deficient, and the parties dispute causation and coverage, which cannot be determined by appraisal. Docket No. 38 at 4-9.

The Court's jurisdiction is founded on diversity of citizenship. 28 U.S.C. § 1332(a). Therefore, the Court applies the substantive law of Colorado. *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995). Under Colorado law, questions of coverage under an insurance policy are generally matters of law reserved for the court. *See Fire Ins. Exch. v. Bentley*, 953 P.2d 1297, 1300 (Colo. App. 1998). The policy must be enforced as written unless the policy contains an ambiguity. *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005). The policy should be construed to give effect to the intent of the parties. *Id*. "Whenever possible this intent should be ascertained from the plain language of the policy alone." *Farmers Ins. Exch. v. Anderson*, 260 P.3d 68, 72 (Colo. App. 2010). "[W]ords should be given their plain meaning according to common usage, and strained constructions should be avoided." *Compton v. State Farm Mut. Auto. Ins. Co.*, 870 P.2d 545, 547 (Colo. App. 1993).

"Colorado possesses a tradition of supporting alternative dispute resolution mechanisms when agreed to by the parties." *City & Cnty. of Denver v. Dist. Ct*., 939 P.2d 1353, 1361 (Colo. 1997). Courts in this district have found the that the appraisal process is properly considered as an arbitration under the Colorado Uniform Arbitration

3

Act, Colo. Rev. Stat. § 13-22-201, *et seq.* ("CUAA"). *See, e.g.*, *Laredo Landing Owners Ass'n, Inc. v. Sequoia Ins. Co.*, No. 14-cv-01454-RM-KMT, 2015 WL 3619205, at *2 (D. Colo. June 10, 2015) (finding that Colorado caselaw supports considering appraisal as a type of arbitration); *cf. Auto-Owners Ins. Co. v. Summit Park Townhome Ass'c*, 100 F. Supp. 3d 1099, 1103 (D. Colo. 2015) (noting that another judge in this district has classified appraisal as arbitration under the CUAA and that Colorado has a strong public policy in favor of arbitration). "Therefore, similar to an arbitration agreement, the court 'must accord the parties a presumption in favor of appraisal and must resolve all doubts about the scope of the appraisal clause in favor of the appraisal mechanism.'" *Church Mut. Ins. Co. v. Rocky Mountain Christian Church*, No. 20-cv-01769-WJM-KLM, 2021 WL 1056515, at *2 (D. Colo. Mar. 19, 2021) (quoting *Laredo Landing*, 2015 WL 3619205, at *2).

Regarding appraisal, the insurance policy states in relevant part:

Appraisal. If you and we fail to agree on the amount of loss, either party can demand that the amount of the loss be set by appraisal. Only you or we may demand appraisal. A demand for appraisal must be in writing. You must comply with SECTION I —

CONDITIONS. Your Duties After Loss before making a demand for appraisal. At least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed.

> a. Each party will select a competent, disinterested appraiser and notify the other party of the appraiser's identity within 20 days of receipt of the written demand for appraisal.
> b. The appraisers will then attempt to set the amount of the loss of each item in dispute as specified by each party, and jointly submit to each party a written report of agreement signed by them. In all instances the written report of agreement will be itemized and state separately the actual cash value, replacement cost, and if applicable, the market value of each item in dispute.

4

> . . . .
>
> > g. You and we do not waive any rights by demanding or submitting to an appraisal, and retain all contractual rights to determine if coverage applies to each item in dispute.
> > h. Appraisal is only available to determine the amount of the loss of each item in dispute.  The appraisers and the umpire have no authority to decide:
> > > (1) any other questions of fact;
> > > (2) questions of law;
> > > (3) questions of coverage;
> > > (4) other contractual issues; or
> > > (5) to conduct appraisal on a class-wide basis.
>
> . . . .
>
> > j. A party may not demand appraisal after that party brings suit or action against the other party relating to the amount of loss.

Docket No. 36-1 at 37-39.  The policy also states:

> Assignment of Claim.  Assignment to another party of any of your rights or duties under this policy regarding any claim, or any part of any claim, will be void and we will not recognize any such assignment, unless we give our written consent.  However, once you have complied with all policy provisions, you may assign to another party, in writing, payment of claim proceeds otherwise payable to you.
>
> > . . . .
>
> Assignment of Policy.  Assignment of this policy will be void and we will not recognize any such assignment, unless we give our written consent.

*Id.* at 40, 47.

### A.  Causation

Defendant argues that the parties dispute causation and coverage, which are issues that are expressly precluded from the scope of appraisal.  Docket No. 38 at 5.  Defendant cites to the policy, which states that the appraiser has "no authority to decide: (1) any other questions of fact; (2) questions of law; [or] (3) questions of coverage . . . ."  Docket 36-1 at 38-39.  Plaintiff argues that a determination of the

5

amount of loss necessarily includes a determination of the cause of the loss as well as the cost of repair.  Docket No. 39 at 2.

This Court has previously addressed this issue and found that, when an insurance provider made a determination that a hailstorm did not cause the damage the insured asserted was covered, the "causation analysis [was] of the type that is contemplated by the appraisal process."  *Fireman's Fund Ins. Co. v. Steele St. Limited II*, No. 17-cv-01005-PAB-SKC, 2019 WL 588190 at *3 (D. Colo. Feb. 13, 2019).  In *Fireman's Fund*, "[t]he Court agree[d] with the holding of another case in this district construing the same term that 'the plain meaning of . . . "amount of loss" incorporates the concept of causation.'"  *Id.* (quoting *Auto-Owners*, 100 F. Supp. 3d at 1102).  Although courts around the country are divided on this question, "[t]he better-reasoned cases . . . hold [that] appraisers necessarily address causation when determining the amount of the loss from an insured event."  *See Walnut Creek Townhome Ass'n v. Depositors Ins. Co.*, 913 N.W.2d 80, 92 (Iowa 2018).  This is because the "amount of loss" is determined with reference to a particular cause*.  See Auto-Owners*, 100 F. Supp. 3d at 1102.  For example, "it would be extraordinarily difficult, if not impossible, for an appraiser to determine the amount of storm damage without addressing the demarcation between 'storm damage' and 'non-storm damage.'"  *Phila. Indem. Ins. Co. v. WE Pebble Point*, 44 F. Supp. 3d 813, 818 (S.D. Ind. 2014).  In determining what damage was caused by the July 29, 2018 hailstorm the appraisers will not be making coverage determinations; the legal determination of coverage is "clearly outside the scope of the appraisal process."  *See Auto-Owners*, 100 F. Supp. 3d at 1103-04.

Defendant argues that the dispute is over which property conditions were caused

by the storm and whether they are covered by the policy, and the dispute is therefore outside the scope of appraisal.  Docket No. 38 at 4-5.  As the Court has found, a causation analysis is the type contemplated by the appraisal process and the appraisers will not make the legal determination of whether the amount of loss is covered.  Therefore, this argument fails.

### B.  Invocation of Right to Appraisal

Defendant argues that plaintiff has not properly invoked the right to appraisal.  Docket No. 38 at 7-9.  Specifically, defendant argues that plaintiff did not comply with the appraisal conditions because she never provided an "itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed."  *See id.* at 8; Docket No. 36-1 at 38.  Plaintiff responds that defendant is utilizing an improperly narrow definition of "itemized" and that, under the proper usage of the word itemized, the estimate from Blue Ribbon qualifies as an itemized document.  Docket No. 36 at 6; Docket No. 39 at 5.  Plaintiff also argues that it was "undeniably clear" from Blue Ribbon's estimate that the "roofing, gutters, patio doors, wood window and wood siding were in dispute."  Docket No. 39 at 5.

On May 13, 2020, Blue Ribbon submitted a repair estimate to defendant.  Docket No. 36-3.  On June 24, 2020, Blue Ribbon demanded appraisal under the insurance policy.  Docket No. 36 at 4; Docket No. 36-5.  On July 11, 2020, defendant informed plaintiff that it did not recognize the assignment of rights under the insurance policy that Blue Ribbon relied on to demand appraisal.  Docket No. 38 at 2-3; Docket No. 37-2.  On July 14, 2020, plaintiff demanded appraisal.  Docket No. 36-6.  On August 14, 2020, defendant responded:

> The demand for appraisal was not preceded by a "written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed" which is a condition to the policy which must be satisfied. State Farm wishes to identify the specific items which are being disputed and which Ms. Garcia seeks to submit to appraisal. In an email to Blue Ribbon Exteriors dated June 17, 2020 (copy enclosed), State Farm listed the items in the Blue Ribbon estimate (supplied May 28, 2020) that it concluded were not warranted because they were not covered by the policy. Please advise whether the items listed as "not warranted" in the June 17 email are the items being disputed. Once you have identified each item being disputed, as required by the policy, State Farm will proceed to appraisal subject to its reservation of rights.

Docket No. 36-7 at 7. Plaintiff did not respond to this correspondence. Docket No. 38 at 8.

Defendant argues that it was unaware that plaintiff sought to recover the entire amount of the Blue Ribbon estimate (including Blue Ribbon's October 1, 2020 amended estimate for $90,923.41) until plaintiff made this clear in her response to defendant's written discovery requests, submitted on December 21, 2020. Docket No. 38 at 8-9; Docket No. 38-4 at 7-8. In plaintiff's interrogatory response, she stated

> Plaintiff retained Blue Ribbon Exteriors ("Blue Ribbon") to inspect the property and prepare an estimate to repair or replace the building materials damaged resulting from the July 29, 2018 hailstorm. Blue Ribbon has prepared an estimate in connection with its investigations and based on its experience in the storm remediation industry in the amount of $40,095.71 and for $90,923.41. The total cost of repair or replacement continues to change based on State Farm's refusal to participate in the appraisal process or pay benefits to put the Plaintiff in her pre-loss condition as costs continue to increase with the passage of time. Ryan Mordhorst is Plaintiff's contact with the Blue Ribbon company. All documents, itemizations, and estimates created by Blue Ribbon's investigations of the property have been provided in Plaintiff's disclosures as GARCIA 000059-00065 and 000107-119. Plaintiff is presently due those amounts.

Docket No. 38-4 at 7. Defendant acknowledges that this interrogatory response was sufficient to inform defendant of the items in dispute and fulfill the appraisal conditions.

8

*See* Docket No. 38 at 8-9.

The estimate that Blue Ribbon provided to State Farm on May 13, 2020 was for $40,094.44.  *See* Docket No. 36-3 at 2.  The amount plaintiff indicated she sought in her interrogatory, $40,095.71, is substantially identical.[1]  When Blue Ribbon sent the estimate to defendant on May 13, 2020, the accompanying email stated that "there were several items that were damaged that were not included in the original statement of loss.  Please see [the estimate] attached for your approval so we can move forward with the restoration process."  *Id*. at 1.  This informed defendant that this itemized list was part of plaintiff's statement of loss.  Defendant argues that plaintiff never identified which items were in dispute, so defendant did not know what plaintiff wanted to proceed to appraisal on.  Docket No. 38 at 8.  However, plaintiff's interrogatory response does not use the word "disputed," and yet State Farm regarded it as sufficient to inform State Farm of the items in dispute.  The policy requires only that plaintiff provide a "written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed."  Docket No. 36-1 at 38.  There is no requirement that plaintiff use the word "disputed" if it is obvious from the list those items are disputed.  The estimate included a "Jobs List" of roofing, guttering, doors, windows, and siding.  Docket No. 36-3 at 2.  This "identif[ies] separately each item being disputed."  Docket No. 36-1 at 38.

As just noted, on May 13, 2020, Blue Ribbon submitted a written, itemized document estimating the repair costs for plaintiff's roof, gutters, doors, windows, and

---

[1] The $90,923.41 amount in plaintiff's interrogatory response is based on a second estimate that Blue Ribbon submitted to State Farm on October 1, 2020.  *See* Docket No. 38-1.

9

siding. See Docket No. 36-3 at 2. On July 14, 2020, plaintiff demanded appraisal.[2] Docket No. 36-6 at 2. Accordingly, plaintiff submitted this itemized list, all of which was in dispute, more than ten days before demanding appraisal. This complies with the conditions required to invoke appraisal in the insurance policy. Because plaintiff properly invoked appraisal before filing suit, the Court rejects defendant's argument that plaintiff waived the right to invoke appraisal by filing suit and participating in this litigation. See Docket No. 38 at 5. Plaintiff properly demanded appraisal on July 14, 2020, and the Court will therefore grant plaintiff's motion to compel appraisal.[3]

### C. Stay of Proceedings

Plaintiff asks the Court to stay proceedings pending the result of the appraisal. Docket No. 36 at 7-8. Plaintiff argues that the appraisal process will resolve some of the disputed issues and may even resolve all of the issues. Id. at 8. Defendant argues that, even if the Court grants the motion to compel appraisal, it should not stay the case because appraisal will not resolve the disputes regarding causation and coverage.

---

[2] Plaintiff attempted to demand appraisal again on September 29, 2020. See Docket No. 36-8. However, this was improper because the policy prohibits invoking appraisal after a party has filed suit. See Docket No. 36-1 at 39.

[3] The Court notes that plaintiff invoked appraisal based on Blue Ribbon's May 13, 2020 estimate, which has a "jobs list" of roofing, guttering, doors – patio, windows – wood, and siding – wood. Docket No. 36-3 at 2. Blue Ribbon has subsequently provided two additional estimates that add patio and pool rooms, painting – exterior, garage door, and drywall to the "jobs list." See Docket No. 38-1 at 1; Docket No. 38-2 at 1. Because these additions to the "jobs list" were not items identified in the original estimate, they are not properly within the scope of the appraisal. See Docket No. 36-1 at 38 (requiring appraisal demand to include "written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed"). Accordingly, the Court compels appraisal only as to the items identified in the "jobs list" in Blue Ribbon's May 13, 2020 estimate. However, narrowing the scope of appraisal to roofing, guttering, doors – patio, windows – wood, and siding – wood has no impact on the corresponding cost estimates associated with each job.

10

Docket No. 38 at 9-10.

A court may enter a stay of proceedings incidental to its inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Springmeadows Condo. Ass'n v. Am. Family Mut. Ins. Co.*, No. 14-cv-02199-CMA-KMT, 2014 WL 7005106, at *1 (D. Colo. Dec. 9, 2014) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)). Courts in this district consider the following factors in determining whether a stay is appropriate: (1) the plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendant; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *Id.* (citing *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 05-cv-01934-LTB-KLM, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006)).

The Court finds that the first three factors weigh in favor of a stay. The appraisal process should resolve key factual issues that are in dispute, such as the extent of the damage to the roof, gutters, patio doors, wood window, and wood siding. The Court has rejected defendant's argument that the appraisal process cannot determine causation and, while coverage is a legal issue for the Court, the Court will better be able to decide it once it has the benefit of the appraisal. Further, the appraisal could limit the need for discovery and thus reduce costs to both parties. The Court is unaware of any interests of non-parties or the public that a stay would impact. Therefore, the Court finds that a stay is warranted in this case. Because the case will be stayed for an indefinite period of time pending appraisal, the Court finds good cause to

11

administratively close this case pursuant to D.C.COLO.LCivR 41.2.[4]

### III. CONCLUSION

For the foregoing reason, it is

**ORDERED** that Plaintiff's Opposed Motion to Stay Proceedings and Compel Appraisal [Docket No. 36] is **GRANTED**. It is further

**ORDERED** that, pursuant to D.C.COLO.LCivR 41.2, this case is administratively closed. Either party may move to reopen the case for good cause. Completion of the appraisal process will constitute good cause. It is further

**ORDERED** that the parties shall file a status report with the Court on or before March 31, 2022, or within 30 days of the completion of the appraisal process, whichever is earlier. It is further

**ORDERED** that Defendant's Motion for Partial Summary Judgment as to Plaintiff's First Cause of Action for Declaratory Judgment [Docket No. 27] is **DENIED without prejudice**.

DATED September 27, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[4] Because the Court will administratively close this case, the Court will deny without prejudice Defendant's Motion for Partial Summary Judgment as to Plaintiff's First Cause of Action for Declaratory Judgment [Docket No. 27]. *See* D.C.COLO.LCivR 41.2 ("Administrative closure of a civil action terminates any pending motion.").